The next case for argument is 18-1160 Mesa v. Apple. This case is 18-1160 Mesa v. Apple. Okay, I think we're ready to go. Mr. Evans. Thank you. May it please the court. The JIRSA invention here concerns a very straightforward idea. And that idea is that when you're at the pool, in a place of worship, any place where you might get separated a little bit from your cell phone, that you can put a vibrating device on your wrist. And when you get phone calls and text messages, you'll know that you received them. They'll be displayed for you, and you can respond without having to pull out your cell phone. Everybody puts cell phones in secure places. They leave them in purses. They leave them in coats. They leave them in pockets. This allows you to always be with your cell phone, even though it's not immediately on you. Every one of the connections between the cell phone and the watch in the JIRSA patent is a wireless connection. Every single one. There's nothing intervening. When you're at the pool, there's no cell tower in the deep end to make the connection. It's just straight from the watch to the phone. And it's that way for a purpose, because you're not trying to go great distances. But it's always wireless. Every disclosure is always wireless. In face of that, there's claim language that talks about the transmit and receive limitations. You have to transmit from the watch to the phone a telephone number and a text message. You have to transmit it with a transmitter in the watch to a cell phone receiver in the phone. Transmit, receive. Transmit, receive. Does that answer the question about whether or not it requires an indirect versus a direct? It does, Your Honor. Why? Because, as Dr. Seamus explained, this transmit-receive relationship is a very close relationship without any intervening structures. What happened here is… Well, I know there was testimony, but we've got substantial evidence review, at least on extrinsic evidence and expert testimony. And there was contrary testimony, too. I grant that one of your witnesses say what you said he said, but that doesn't end the inquiry for the board, right? Well, this is claim construction, so it's de novo review. But they're relying on expert testimony? I believe de novo review is de novo review. And where the board got in trouble is they used the word coupled. Instead of transmit and receive or a wireless connection, they used the word coupled directly or indirectly. They didn't make that word up. That word appears in the specification, right? It's in the specification, but it's not in the claim. Not in this claim element. It's in other claim elements. It's not in this claim element. And I submit that when you use it in one place and not another, you're trying to send a different… You agree to the construction of coupled to as allowing both a direct and an indirect connection? I agree with that with limits. In the power integrations case, the word coupled was actually in the claim element. And they tried to read it to say that any of the elements on a circuit were coupled to each other. And the federal circuit, this court, said that was too broad. And so I submit that in this case with Acharya, where they're trying to take and say that something is coupled when you have a wristwatch that is connected to a laptop that connects to a proxy server that goes to the cloud, that goes to another proxy server, that goes to a gateway for the PSTN to IPR gateway, to a cell tower, to a phone, that you are far beyond anything you could characterize as within the scope of this claim. Even if the word coupled was there, you couldn't say those were coupled. Maybe that would be an indirect coupling, what you just described. But you're still directly or indirectly coupled. You agreed to that construction. And I don't see why we shouldn't adopt or consider adopting that construction throughout this patent. But coupled doesn't ever show up as a word in the claim. The claim talks about transmitting to a receiver and receiving from… Whether or not it's direct or indirect. So generally, we will look at the specification to conclude as to whether or not there's a necessity to limit it. I mean, you're telling us, you point to the embodiments. Those are in the specification. Those are what you point to to show that that means direct. Yes, because everything in the spec is direct. The claims don't answer the question, right? I mean, the claims don't say direct. The claims don't say direct, but what I believe is true, what Dr. Schama said is true, is that when you have a transmit-receive relationship between a transmitter and a receiver, in the context of communications, that it is, in fact, an RF wireless connection. And that's all that you see in this patent. What about column four, lines 12 through 15? That's one of the places, at least, where the word couple appears. And coupled, as Judge Rayna pointed out, you agree that coupled is connected directly or indirectly. That's the way we construe coupled, right? But then it goes on to say, in an exemplary embodiment, maybe a wireless radio transmitter, a wireless CDMA transmitter, or a wireless Bluetooth transmitter. Then, alternatively, an electronic transmitter may be any type of wireless electronic transmitter known in the art. So it's constantly tying the word couple in this context to wireless communications. But even if we said coupled in the claim, the power integrations case says, you can't have an unbounded coupling. The claim can't be that broad. In power integrations, they were trying to say that all of the different elements in a circuit, on a circuit board, were coupled to each other. And this court said, no, no, no, that's too broad for coupled. You can't say that they're all coupled. It's less than that. In this case, in Acharya, they're trying to say that it's coupling across an entire network with all the intervening processors, not just circuits. So you're saying, even if we conclude that the claims cover indirect, indirect is not broad enough to cover the priority? That's correct. The word coupling, whether it's... Indirect, so then we have to, we're defining the definition term, right? So we're defining coupled as including indirect, and then we're defining indirect to mean? I think this is all incorrect, and this is all error. I don't think it should be, I don't think coupled should be part of the definition because coupled is not used in the claim language. Coupled is used in other claim elements. It's not used in this claim element. This claim element says transmit and receive. It doesn't say coupled. And so even if the patent disclosed something broader, the claim is narrower. But transmit and receive doesn't inherently mean direct either. Well, when you talk about a transmitter that transmits and a receiver that receives, I believe in the context of these kinds of, it's like a walkie-talkie. You have a... Why? If I'm talking on my cell phone to my mother, I am transmitting a message. It is going through a cell tower and a cell network, and it's being received on my mother's cell phone. It is transmitting and receiving, isn't it? In the kind of plain language meaning of those terms? Except that when you look at the specification, you're... But you're going back and forth between the claim language and the specification. The claim language clearly does not include direct, right? It includes transmit and receive. It does transmit and receive. And we can't read direct in just from the plain meaning of those terms. We have to look elsewhere. I believe in this argument that transmit and receive can note the wireless connection that we put forth in our proposed instruction. But we only get there through reading the specification. Correct. But once we start reading the specification and look at the different ways they talk about devices and the like, and then the board looked at expert testimony, and frankly, you tell us we can't rely on that, but you keep talking about your expert. I mean, if it's a battle between your expert and their expert, then we're bound to defer to their expert, aren't we? But then you're still bound by the power integrations case. It says that even if it said coupled, you can't read that overly expansively to reach all the way across analysis. Yes, but over expansively means over expansively in distinction with what it says in the specification. If the specification provides for a really, really broad construction under BRI, and it's supported by the expert testimony, then you can read it as broad as the specification will support. But this specification does not read that broad. Yes, but your other side, the expert on the other side says it does. When you look at the two, CHARIA versus this, I believe that coupled in the context of power integrations can't be read broadly. Let me ask you this hypothetical. Let's assume we don't find enough in the claim language or even in the specification to come up with the claim construction, and that we have to look to extrinsic evidence. And this is all hypothetical, but your expert has your meaning. Their expert has their meaning. Aren't we bound to defer to that under Supreme Court precedent? It's a substantial evidence question when we're talking about extrinsic evidence. But I don't think you get to extrinsic evidence because I believe the specification is clear. You've got to answer my hypothetical, though. My hypothetical is we do get to extrinsic evidence. And if we have two pieces of competing extrinsic evidence and the board relied on one and not on yours, unless it's completely arbitrary, aren't we bound to defer under substantial evidence standard? Well, if that's all you're left with, yes. But I don't believe that's all you're left with. The clock's running, so why don't you move to let's assume that we affirm the claim construction, including indirect. And where does that leave you on the anticipation? Well, I still think then under the power integrations case, it's too broad and you can't find it anticipated because you can't, even with a couple definition, you can't reach that far in the power integrations. What limiting factor would you have as put on indirect based on the specification? Well, if it doesn't have to be direct, if it can be indirect, how indirect can it be? I don't believe it should be indirect. But if it's going to be indirect, it's going to be indirect. The embodiments talk about very close distances between the watch and the phone, not long expansive distances across cell towers, nothing require intervening proxy servers and heavy electronics. Well, give me an example of what, I mean, a watch and a cell phone are probably still physically proximate next to each other. They can be in the car or across the house. Well, what makes a difference then if it's going through a cell tower or if it's going through some other indirect means, if it's the same simultaneous transmission? Because this invention works in remote areas where you might not want to spend all the battery power to have your cell phone, I'm sorry, to have your watch, have to find a cell tower to get back to your watch or to your iPhone. I don't understand where that is in the claim limitations or anything. Well, my point is, is direct... What do you mean conceding? I mean, we're not going to make you concede. Assuming we read this as requiring indirect and direct, what would be an example of an indirect transmission and receipt as opposed to the walkie-talkie like direct one you want us to apply? I can't think of one short of a very complicated infrastructure that's clearly not disclosed in this patent specification. So you think that there's nothing outside of direct? Not within the scope of this claim, no. So you're not going to answer the hypothetical that if we disagree with you on claim construction, you still win because you can't come up with anything where you think it would be covered. Well, I don't understand. I mean, I'm not trying to play games. I don't understand. If we reject your construction of direct, what are we left with in terms of construing it as indirect? What would indirect include that still doesn't cover the reference? And I can't think of such a thing, and I didn't propose that construction. That's where I think the construction is wrong. I thought you were still making an argument that even under the claim construction that the board adopted, there would still be no anticipation. I say that because you can't use the word coupled, whether it's direct or indirect coupling. You can't use it to reach as far as they're trying to reach you when you look at the power integrations case. So let me ask you once again. We reject your claim construction that it has to be direct. We agree with the board's construction that indirect transmission is sufficient. What's wrong with their anticipation finding then? Apart from the claim construction issue. What's wrong with their anticipation finding then is that the thing they're trying to link is, well, for further reasons. Is it not indirect transmission? It is an indirect connection. I would agree with that. Okay. You're into your rebuttal. Okay. I'd like to hit a few more points, though. The other problem we have is that the word first electronic signal is used throughout the claims. The first electronic signal has to do a lot of things. What the board did here is the board picked between all the different signals that were in the various embodiments. There were 25 embodiments in a chariot, and it selectively connected them. They don't appear there as a range in the claims. And if you read the case of net money, net money involves several different protocols with differences. And all the elements were there, but they were in different protocols. And this court found that you can't – it has to be as a range in the claim. And so I believe the net money case precludes them. You know, what Apple says is that there's a unified first electronic signal. Well, the board never said unified. They tried to take all these different signals, which were coming from different embodiments, and arranging them as in the claim with hindsight analysis. You can't do that on net money. Finally, I'd like to hit a little bit on Sweeney and Acharya on obviousness. There's no motivation combined. Their expert provided none. Our expert provided extensive testimony about why there's no motivation combined, the simple aspects of Sweeney with the complicated infrastructure of Acharya. You know, kinetic concept says that when two devices work just fine, there's no reason to combine them. And the only thing the board found here is it repeated the arguments and then said, we agree with Apple. It said they would be beneficial in places, but that is not a motivation combined. That is not an explanation of why a person of ordinary skill in the art would combine these two devices that work perfectly well. I'd like to, at this point, reserve a must. Well, you've already used your time. Thank you, Your Honor. Thank you. Your Honor, may it please the court? Could you help me out a little? We understand all the arguments. We've read all the briefs. Your friend repeatedly, repeatedly cited the case of power integrations as sort of encompassing everything, affirming everything he's saying here. And that's not cited in the briefs, I guess, because it's more recent. I don't know. So why don't you, if you could address the impact of the power integration. Sure. I'm happy to. On two different levels. Number one, under the claim construction ruling itself. And number two, and I'll just hit this point really quickly, it doesn't matter because the board found the 6E and A8 claim limitations met. The transmit and receive limitations met, even under Moss's proposed construction. That said, going back to the in-rate power integrations case, I believe that case did come out slightly after we filed our response brief or shortly before. It wasn't cited in our opening brief. But that case involved a coupled-to limitation that really turned on the unique facts of the claim language and specification there. And that coupled-to limitation required a digital-to-analog converter coupled to a counter. And in addition, the counter had to cause the digital-to-analog converter to adjust the control input and vary the switching frequency. The prior art disclosed an intervening memory that severed this requisite control relationship. And so that was the problem in that case. We don't have anything like that here, number one, because the transmit-receive limitations don't have that cause language. It says transmit, transmit or configure to transmit, or a signal received from the cell phone. And even based on that language, there's no suggestion that there's any intervening circuitry here that's somehow interrupting the signaling pathway. So either way, you have signals that are meeting those claim limitations. So this is just a different claims, different specification than were at issue in the in-rate power integrations case. We think this is more like the generic use of coupled-to or connected-to. The cases we cited in our brief, the Douglas Dynamics and MEMS technology cases, as it relates to the claim construction issue. And the board, thank you for letting me get that off my mind first and foremost. The board, other than that, the board found the claims invalid here on five grounds, really two main grounds, which are independent of each other. In other words, if we agree with the board on anticipation, we don't reach the obvious. Absolutely. This court can inform the board's final written decision on either ground. Either way, we don't think there's any legal error, and the board's decision and its findings are supported by substantial evidence. If we disagree with the claim construction on direct, there's no argument made on anticipation, even if we construe the claims as requiring direct? The board alternatively found that even under Moss's proposed claim construction requiring the direct impaired connection theory, that actually only applies to the claim limitation 6E and 8. And the board found under that 6E limitation that that claim limitation was met, even under Moss's direct impaired connection theory. Specifically, on page 22 of the board's decision, although the cited sections of Achari disclose that in one embodiment, the laptop, well, I don't want to just read from the board's decision for you, but the paragraph in the middle of that page, even under Pat Noner's narrower reading of the claim, we determine that a POSA reading Acharya would at once envision, etc., etc. And that's the diagram you see in our red brief at page 48 of our red brief. That illustrates the board's finding there where you have this direct connection between the portable device and the cell phone in the bottom right-hand corner. That's the modification the board came up with. So even under their proposed claim construction, they have that argument doesn't hold water. Turning first to anticipation or turning to anticipation of Moss's same first electronic signal argument, the board consistently cited to the same signal throughout the claims. It's a signal that initiates a communication session. And one thing I wanted to highlight on that, just to provide a little bit of background context, is that it was undisputed before the PTAB that that first electronic signal was a SIP invitation. And you see that in the board's, in the transcript of the PTAB hearing beginning at appendix page 0428, you see this dialogue between the court and MOSSA about the meaning of the memory unit limitation, where MOSSA was arguing that a SIP invite is not enough. It has to be a caller, a text message that's stored in memory. And in fact, on page 0431 of the appendix, MOSSA expressly takes the position that the first signal is an invite request. So they identified the invite request below. Really, the only dispute with respect to the meaning of the first electronic signal below was with respect to the memory unit limitation, and that's where you see the need of a court's analysis on this issue in its final written decision with respect to the memory unit limitation. And the board found therein that, and also I would point out that the board recognized that the previous discussion leading up to that, it's clear that the board is recognizing that when you're initiating a session, you have this first electronic signal. So it was undisputed that the first electronic signal involved, at a minimum, a SIP invite. And in the board's final written decision at pages 15 to 16, the board agreed and said the claim does not limit the first electronic signal to an incoming caller text message. But even under MOSSA's proposed construction, you have this language in column 17 where this control message, the SIP invite, is also holding the media payload, which weds the SIP invite with the media payload. And so that was the finding below, and we believe that was supported by substantial, that's consistent in the limitations throughout reading the passages the board cites. Turning next to the obviousness grounds, the board provided reasoned, evidence-supported explanations and clearly articulated the motivations to combine. The board relied on teachings from the references themselves. They weighed both parties' expert testimony on that issue, and those findings are supported by substantial evidence. I'm happy to answer any other questions the board has. Thank you, Governor. I'd just like to address two points. The first one is that the board expressly found, quote, this is at page 21, appendix page 21, we agree with petitioner that even under patent owner's narrow reading, Acharya discloses limitation. But then it goes on to say, Dr. Seamus is correct in stating that Acharya does not explicitly state that the portable device transmits a phone number and a text message directly to a paired cell phone using Bluetooth. It's not there. It's a missing element. And so when they go to this at once envision test, you can't find missing elements with the at once envision test. This is anticipation. The element has to be there. You can't just envision it. It has to be there. That's the NIDAC case. In NIDAC, they said that when there's a missing element, you can't find anticipation even if you at once envision it. Secondly, you know, they say it's all agreed that there's this SIP invite signal is the first signal. That's not correct. We went through and we tracked the board's decision, we tracked the petition, and we tracked all the different signals that they tried to bring together. And we put them in our opening brief in a table that spans pages 30 to 32 of our opening brief. And it points to all the different embodiments that they tried to combine that they now call the unified first electronic signal. And you can't do that under net money. And we show that because there's all these different signals from all these different embodiments picked and poked and selected. It's like the different protocols. You can't do that under anticipation. And then when you get the obviousness, obviously, we take the position that the board simply affirmed without explanation. Thank you. Thank you. We thank both sides and the cases.